Towe T. ASTON, Appellee,

v.

WARDEN, POWHATAN CORRECTIONAL CENTER, Appellant.

Towe T. ASTON, Appellant,

v.

WARDEN, POWHATAN CORRECTIONAL CENTER, Appellee.

Nos. 77–2408 and 77–2409.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 7, 1978.

Decided April 18, 1978.

his trial by the use of an unqualified interpreter.[1] Virginia appeals and Aston cross-appeals. We find no merit in the cross-appeal; and since the issue of the qualifications of the interpreter is purely factual, we do not discuss it further.[2] While we think that if Aston can sustain his allegations with regard to the denial of a fair and impartial jury he is entitled to the writ, it was error for the district court to issue the writ without a plenary hearing. We vacate the district court's order issuing the writ and remand the case for further proceedings.

### I.

Aston was tried in a Virginia state court on charges that he and a companion, one James Knox, had abducted two women on the night of April 10, 1974 and forced one of them to perform fellatio. Although both men were equally implicated, Aston was tried alone because Knox had fled Virginia immediately after the incident. However, on the third day of Aston's trial, November 14, 1974, Knox suddenly returned and testified as a defense witness. He was arrested at the first recess during his testimony.

On November 15, before Aston's case was submitted to the jury, Knox appeared at a hearing, held in the same building where Aston was being tried, to consider a request by the Commonwealth that his bail be raised. Aston and his wife attended this hearing, where they allegedly observed one of the jurors from Aston's trial. They reported this observation to defense counsel and expressed concern that some of the remarks made at the bail hearing might have been prejudicial to Aston's case. Specifically, Mrs. Aston stated that the attorney at the bail hearing represented that Aston would be found guilty, in which case Knox would have a great incentive to flee.

Jerry P. Slonaker, Asst. Atty. Gen., Richmond, Va. (Anthony F. Troy, Atty. Gen. of Virginia, Richmond, Va., on brief), for appellant.

Gilbert K. Davis and Carole S. Holman, Vienna, Va., for appellee, cross-appellant.

Before WINTER, BUTZNER and RUSSELL, Circuit Judges.

WINTER, Circuit Judge:

Without a plenary hearing, the district court granted the application of Towe T. Aston for a writ of habeas corpus on the ground that he had been denied his sixth amendment right to a fair and impartial trial. At the same time, it rejected Aston's contention that he had been prejudiced at

---

1. The two victims of the crimes of which Aston was convicted were Thai. One spoke broken English and the other spoke no English.

2. The interpreter was an employee in the Consulate section of the Thai Embassy, where she had been employed for seven years. While she had no formal training as an interpreter, she had been reading English for twenty-five years and speaking it for about fifteen years. She had earned a Bachelor of Education Degree in Thailand and a Bachelor of History Degree at Howard University, Washington, D.C. Her duties at the Thai Embassy required fluency in both Thai and English.

That afternoon, after the jury in Aston's case had retired, defense counsel brought this matter of possible improper jury influence to the attention of the trial judge. Although defense counsel disclaimed any personal knowledge about Knox's bond hearing, he did relate to the trial judge what Mrs. Aston had told him. He argued that these allegations were serious enough to warrant an interrogation of the juror in question, who happened to be the only black on the panel, in the event that the verdict was unfavorable to Aston.

To make its record before witnesses to the incident dispersed, Virginia requested and was granted permission to elicit testimony from Tom McKittrick, the prosecutor who had handled the bond matter, and a police officer who also had participated in the hearing on Knox's bond. McKittrick testified that he had, in support of the motion to raise Knox's bail, told the court: (1) that Knox was a convicted felon; (2) that Knox was unemployed and had no family ties to the area; (3) that Knox was implicated in the abduction-sodomy case; and (4) that Knox was likely to flee if Aston were found guilty. He denied making any prediction concerning the likelihood that Aston would be convicted. Cross-examination revealed that McKittrick had informed the court that Knox faced two possible life sentences and that Knox had told the court that he was represented by the same attorney as Aston.

The testimony of the police officer who had also attended the bond hearing confirmed McKittrick's description of the hearing. After both he and McKittrick had testified, the state court offered defense counsel the opportunity to call his own witnesses. Defense counsel declined, indicating that he preferred to defer any action until a verdict had actually been rendered.

When later that day the jury sent word that it had reached a verdict, defense counsel moved that, if the verdict were guilty, the juror be detained for questioning. The trial judge denied this motion. As he viewed the matter, there was no evidence of prejudice because everything that had reportedly been said at the bond hearing had already been admitted into evidence at Aston's trial. The verdict proved to be guilty, and Aston was eventually sentenced to two 3-year terms. After exhausting his state remedies, he filed the petition that is the basis for this appeal.

## II.

In concluding to grant the writ because of improper jury influence, the district court placed particular emphasis upon the allegation that McKittrick had represented to the bail hearing judge that Aston would probably be convicted. In the view of the district court, the remark, if made, would have been highly prejudicial, and the trial judge should have interrogated the allegedly infected juror; for such questioning might have revealed that the exposure, if any, had not been prejudicial. On the trial record, however, the district court could not say, because of the lack of interrogation, that Aston had received his right to an impartial jury.

The trial court's failure to explore the issue of prejudice while the matter was fresh in the mind of the key person—the juror—was extended by the district court one further step. The district court concluded that it would be pointless to attempt to reconstruct the situation at trial through an evidentiary hearing because the juror could not be expected to remember precisely what had happened three years before, especially since the two relevant court proceedings might be easily confused. The district court therefore issued the writ without conducting any evidentiary hearing. Virginia moved for reconsideration and for an evidentiary hearing,[3] stating

**3.** This apparently was Virginia's first request for a hearing. Although the failure to include such a request in its motion for summary judgment filed in response to Aston's petition for a writ of habeas corpus did not operate as a waiver of any right to a hearing, see Mitchell v. Follette, 358 F.2d 922 (2 Cir. 1966), the Supreme Court has indicated that the better procedure "would be for the custodian 'to indicate in any submission asking dismissal as a matter

that it had reason to believe that the juror in question had not even been present at the bond hearing. This motion was summarily denied.

### III.

■ Virginia initially contends that the district court erred in overturning the trial court's determination that there had not been a sufficient showing of prejudice. Because, so the argument runs, Aston failed to prove that the juror had actually been exposed to prejudicial material, there was no need for the trial court to question the juror. We have held that a trial judge may decline to question a juror where there is no substantial reason to fear prejudice, *United States v. Jones*, 542 F.2d 186, 194–95 (4 Cir. 1976); *United States v. Hankish*, 502 F.2d 71, 77 (4 Cir. 1974), but we think that this is not such a case.

The record does not convincingly demonstrate that the evidence adduced and the statements made at the bond hearing were no more than what the jurors heard at Aston's trial. Mrs. Aston claims that at the bond hearing the prosecutor represented that Aston would likely be found guilty. We agree with the district court that if the statement was both made and heard by one of the jurors in the Aston case the effect would be to destroy the fairness and impartiality of the trial to which Aston was entitled. Additionally, the prosecutor told the judge at the bond hearing that Knox faced two life sentences. This information was certainly not developed in Aston's trial and if heard by an Aston juror at Knox's hearing, would raise an issue of possible prejudice. *See United States v. Jones, supra.*

■ We therefore agree with the district court that the evidence of prejudice was substantial enough to require further inquiry by the trial judge. The sixth amendment right to an impartial jury is so central to due process that a trial judge must be assiduous in insuring that it has not been abridged. *See Groppi v. Wisconsin*, 400 U.S. 505, 509–10, 91 S.Ct. 490, 27 L.Ed.2d 571 (1971). When there is substantial reason to fear that prejudice has occurred, he must question the jury. *See United States v. Pomponio*, 517 F.2d 460, 462–63 (4 Cir. 1975). Only in that way can the judge be certain that the jury remains the impartial group to which a defendant is entitled.

### IV.

We disagree with the district court, however, that Aston should be granted a writ of habeas corpus at the present stage of the proceedings without affording Virginia an evidentiary hearing.

■ There may, of course, be situations where a prisoner's entitlement to relief is evident from the facts admitted or on the state court record alone. *See Browder v. Director, Illinois Dept. of Corrections,* —— U.S. ——, ——, 98 S.Ct. 556, 562, 54 L.Ed.2d 521, 532 n. 10 (1978) (dicta); *Walker v. Johnson*, 312 U.S. 275, 284, 61 S.Ct. 574, 85 L.Ed. 830 (1941); *Meers v. Wilkins*, 326 F.2d 135, 140 (2 Cir. 1964).[4] But where a prisoner's right to relief turns on facts which are in dispute, the prisoner must establish a *prima facie* case and the state must be given an opportunity to introduce evidence upholding the validity of its action. On this point, we find persuasive the reasoning of the Third Circuit in *McNair v. New Jersey*, 492 F.2d 1307 (3 Cir. 1974), a case in which a hearing was ordered in circumstances similar to this case:

[C]onsiderations of comity and proper respect for the state courts counsel against precipitous action to invalidate their

---

of law, the proceedings to which it deems itself entitled if its request should be denied.' " *Browder v. Director, Illinois Dept. of Corrections,* —— U.S. ——, ——, 98 S.Ct. 556, 562, 54 L.Ed.2d 521, 533 n. 12 (1978) (quoting *Mitchell v. Follette, supra,* 358 F.2d at 929).

**4.** Also distinguishable are cases involving alleged improper influence on the jury in federal

prosecutions where we have, upon a showing of substantial reason to fear prejudice, reversed and remanded for a new trial without first requiring an evidentiary hearing. *E. g., Pomponio, supra; Hankish, supra.* In those cases there were present no considerations of comity requiring a hearing and strict proof.

judgment. If, when viewed against the backdrop of all the facts, the state court decision may be found to be correct, it should not be overturned because it is based on less than all information which can be made available to the district court.

While it is true that the state bears responsibility for the proper preparation of a record, nevertheless, the public interest requires that opportunity be given to present evidence which might show that the petitioner suffered no constitutional deprivation.

492 F.2d at 1309.

■ On this record, it is unresolved whether the prosecutor at the Knox hearing made the statement alleged by Mrs. Aston. He and the police officer deny that he did, and a determination of their credibility and that of Mrs. Aston cannot be made at least until Mrs. Aston has testified. Even if the statement was made, the questions are unanswered as to whether the juror heard it and what weight, if any, he gave to it. Indeed, there is even an unresolved question of fact as to whether any Aston juror was present at the Knox hearing. Finally, there are questions, if an Aston juror was present at the Knox hearing, as to whether the juror heard the representation as to the sentences facing Knox, and, if so, the effect on the juror. Thus, we conclude that *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), requires that an evidentiary hearing be conducted.

It may well be, as the district court concluded, that the passage of time since the original trial has caused memories to fade, especially when there is a chance of confusion between the trial and the bond hearing, such that none or not all of the unresolved questions can satisfactorily be answered. But we cannot presume conclusively, as did the district court, that such is the case; nor does the passage of time excuse the mandate of *Townsend v. Sain, supra.* The essence of Aston's constitutional claim is the denial of a fair and impartial jury; it is not the unfortunate failure of the trial judge to conduct proceedings to determine if a fair and impartial trial was denied at the time that the claim arose. As to the essence of Aston's claim, there must be an evidentiary hearing as to the unresolved questions to determine in fact if the impartiality of the jury was adversely affected.

We therefore vacate the district court's order granting the writ and remand the case for further proceedings in accordance with this opinion.

*VACATED AND REMANDED.*