Terrence G. JOHNSON,
Petitioner–Appellant,

v.

STATE OF MARYLAND,
Respondent–Appellee.

No. 89–7132.

United States Court of Appeals,
Fourth Circuit.

Argued July 19, 1990.

Decided Oct. 1, 1990.

Rehearing and Rehearing In Banc
Denied Nov. 13, 1990.

Keith R. Fisher, argued (Patricia M. Wright and Lauren Clingan, on brief), Hogan & Hartson, Washington, D.C., for petitioner-appellant.

Mary Ellen Barbera, Asst. Atty. Gen. of Maryland, argued (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief), Baltimore, Md., for respondent-appellee.

Before ERVIN, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.

ERVIN, Chief Judge:

Terrence G. Johnson appeals the district court's denial of his petition for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. During his trial, a juror told the trial judge *in camera* that she thought the jury foreman was racially prejudiced because he had told her, "the blacks are sticking together." The judge did not notify Johnson or his attorney of this incident. Johnson seeks habeas relief on the grounds that the judge's lack of response to this information denied him his constitutional rights (1) to a fair trial before an impartial jury, (2) to effective assistance of counsel, and (3) to be present at critical stages of his trial. We agree with the state court's finding that neither the alleged statement nor the judge's meeting with the juror prejudiced Johnson's case or influenced the verdict of the jury. We therefore find any error to be harmless and affirm the decision of the district court.

I.

On June 26, 1978, Johnson was taken into custody by Prince George's County (Maryland) police officers after the car in which he was riding was stopped for a traffic violation. At the stop, the officers found items inside the car that made them suspect the occupants had been involved in a recent larceny. At the police station, an altercation developed between Officer James B. Swart, Officer Albert Claggett, and Johnson. Claggett then took Johnson into a separate room where, according to Johnson, the police officer began to beat him. Johnson grabbed Claggett's revolver, shot the officer in the abdomen, and ran from the room. He then fired several more shots, killing Officer Swart. Claggett also died from his wound.

Johnson, who is black, was prosecuted on two counts of murder and related charges arising from the deaths of the officers, who were white. The trial was preceded by extensive voir dire intended *inter alia* to disclose any racial bias on the part of the prospective jury members.[1] On March 31,

---

1. Approximately 350 potential jurors were summoned, from which twelve jurors and two alternates were selected.

1979, the jury convicted Johnson on one count of voluntary manslaughter and one count of use of a handgun in the commission of a violent crime, both related to the shooting of Officer Claggett. He was acquitted on both counts of murder and was found not guilty by reason of insanity of the manslaughter and other counts relating to the shooting of Officer Swart. Johnson was sentenced to ten years' incarceration for the manslaughter conviction and fifteen years' incarceration for the handgun conviction to run consecutively.

The Maryland Court of Special Appeals affirmed his conviction in an opinion filed February 5, 1980. The Maryland Court of Appeals denied his petition for a writ of certiorari, as did the United States Supreme Court.

Approximately a year after the trial, a researcher with the National Jury Project conducted post-trial interviews of the jurors in Johnson's case. He advised Johnson's lawyers that one juror, Jacqueline Ball, told the trial court judge, Judge Jacob Levin, during the trial that she believed the jury foreman was racially prejudiced. On March 18, 1980, Johnson filed a petition for post-conviction relief in state court under Article 27, section 645A of the Annotated Code of Maryland. He argued that because he and his counsel were not present at the meeting between Judge Levin and Ms. Ball, he was denied his constitutional rights to be present at all critical stages of his trial, to have effective assistance of counsel, to challenge a juror for cause, to be tried by a jury of competent jurors, and to be notified of any communication from the jury to the court pertaining to the case.

Judge Howard A. Chasanow of the Circuit Court for Prince George's County conducted hearings on Johnson's petition on November 19, 1980, and on January 21, 1981. In preparation for these hearings, Johnson's counsel deposed Judge Levin, juror Ball, the foreman William H. Burns, and two other jurors. During the hearings, Johnson's counsel argued only that his client's constitutional right to be present at a critical stage of the trial had been violated, and Judge Chasanow decided

only that issue. In its opinion, the state court found the following facts:

> During the second week of the petitioner's trial, the judge received a note informing him that a juror, Jacqueline Ball, wished to speak with him. After receiving the request, the judge told all counsel, at a bench conference ..., that he planned to meet with juror Ball. A short recess was taken and the judge met with the juror in his chambers. Ms. Ball told the judge that in her opinion the jury foreperson, William Burns, was "prejudiced." Her sole basis for the foregoing assessment of bias was Burns' statement that "the blacks (presumably jurors) were sticking together." The judge talked to Ms. Ball and apparently eased her suspicions about the foreperson, but the exact words spoken were not remembered by the judge. The judge ended the meeting by asking Ms. Ball to notify him if she had any further problems with the foreperson. It is apparent that the judge was of the opinion that the meeting had resolved Ms. Ball's concern and that the conversation was so innocuous it was not necessary to inform counsel or the petitioner of the matters discussed. The trial thus proceeded without further mention of the judge's conversation with Ms. Ball. The judge was not contacted again by Ms. Ball nor by any other juror about the foreperson.

*Johnson v. Maryland*, No. 88–1448, slip op. at 4–5 (D.Md. Mar. 24, 1989). From these facts and in consideration of the extensive voir dire, Judge Chasanow concluded that "the trial judge's meeting with juror Ball out of the presence of petitioner in no way prejudiced the petitioner's case nor did it have any tendency to influence the verdict of the jury."

On March 6, 1981, Johnson applied to the Maryland Court of Special Appeals for leave to appeal Judge Chasanow's denial of post-conviction relief. The Court of Special Appeals denied his application in an opinion explicitly adopting Judge Chasanow's facts and conclusions.

On November 15, 1982, Johnson filed a petition for writ of habeas corpus in the

United States District Court for the District of Maryland asserting that Judge Levin's *ex parte* meeting with the juror violated his sixth amendment right to effective assistance of counsel. The court, finding that the issue of effective assistance had never been considered by the state courts, dismissed Johnson's petition "without prejudice to the petitioner's right to re-file for a writ of habeas corpus once he has exhausted his available state remedies." *See Johnson v. Maryland*, 563 F.Supp. 241, 244 (D.Md.1983). This court summarily affirmed the district court's decision, and the Supreme Court denied Johnson's petition for a writ of certiorari.

On February 11, 1985, Johnson filed a second post-conviction petition in state court. His alleged grounds for relief were the denial of his right to effective assistance of counsel and denial of his right to trial by a fair and impartial jury. Judge G.R. Hovey Johnson of the Circuit Court for Prince George's County denied Johnson's petition on December 18, 1985. After observing that "it appears to this court that the petitioner abandoned the present claims by failing to mention them at the initial post-conviction hearing before Judge Chasanow or in petitioner's application for leave to appeal," he nevertheless addressed the merits of Johnson's petition. Judge Johnson adopted Judge Chasanow's findings of fact and held that even if Judge Levin had committed any error in handling his conference with Ms. Ball, the error was harmless.

On appeal, the Maryland Court of Special Appeals denied his application in an opinion dated August 8, 1986, stating that "all of the issues presented here have been waived by virtue of the applicant's failure to have raised them before." The court, however, then considered the merits of Johnson's allegations and found that they afforded him no basis for relief.

On May 9, 1988, Johnson filed a petition for federal habeas corpus relief in federal district court, which denied Johnson's petition on its merits. It reasoned that under *Rushen v. Spain*, 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983) (per curiam), Judge Chasanow's factual findings were entitled to a presumption of correctness. Affording deference to those findings, the court concluded that "any error on the part of Judge Levin was harmless." *Johnson*, slip op. at 14. This appeal followed.

## II.

■ Before reaching the substantive merits of this appeal, we will first briefly address the State's contention that Johnson waived two of his legal theories in support of his present petition by not pursuing them during the first round of state post-conviction proceedings. After reviewing the long procedural history of this case and examining and hearing thorough and well-reasoned arguments by both parties, we believe that it is right and proper for us to address the issues in this case on their merits. Johnson raised all of these issues in his post-conviction petition before Judge Chasanow, and the state judge did not make any affirmative finding of abandonment in the first state post-conviction opinion. At the federal level, Judge Young remanded the case to the state courts for further consideration of these issues.[2] Every court since then has addressed Johnson's petition on its merits. There is no reason why we should decline to do so now. *See County Court of Ulster County v. Allen*, 442 U.S. 140, 153–54, 99 S.Ct. 2213, 2222–23, 60 L.Ed.2d 777 (1979) (when state courts consider merits of post-conviction petition, no policy reasons prevent the federal courts from doing likewise).

As noted above, Johnson argues three reasons why the trial court's inaction de-

2. In addition, in the State's brief to this court during Johnson's appeal of Judge Young's decision, it stated:

If this Court upholds the District Court's ruling, Johnson will not be precluded from raising the counsel claim in State court despite his failure to litigate it during his first post-conviction proceeding. Because he was represented by the same counsel at trial and at post conviction, the omission would not be treated as a knowing and intelligent waiver. *Curtis v. State*, 284 Md. 132, 395 A.2d 464 (1978).

Brief of Appellee at 10 n. 1.

nied him his constitutional rights at trial. First, the juror's comments indicated that the jury foreman may have been racially prejudiced and thus Johnson did not receive a fair trial before an impartial jury. Second and third, the judge's failure to notify Johnson and his attorney of the juror's concern deprived Johnson of his right to effective assistance of counsel and his right to be present at trial. We believe this case pivots on the first of these contentions.[3]

■■■ The facts in this case are closely analogous to those in *Rushen v. Spain*, 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983). The district court in *Rushen* granted a habeas petition based on two *ex parte* unrecorded conversations between a juror and the judge during the course of a trial involving violent crimes allegedly committed by Spain, a member of the Black Panther party. When a defense witness on cross-examination testified that a Black Panther member named Pratt, not on trial, had been imprisoned for the murder of a Santa Monica woman, a juror informed the judge that the person murdered had been a friend of hers and that if testimony continued on that subject she might begin to cry in the courtroom. Neither that conversation nor a subsequent meeting was recorded. The juror also told other jurors that Pratt had been convicted of murdering her friend, although she denied saying anything derogatory about the Black Panther party. *Id.* at 116, 104 S.Ct. at 454. Spain sought habeas relief on the grounds that he had been denied his constitutional rights to be personally present at these meetings with the judge and to be represented by counsel.

The Supreme Court in *Rushen* acknowledged the constitutional right of a defendant to counsel and to be personally present at all critical stages of the trial, and assumed that the *ex parte* communications at issue were constitutional error.[4] *Id.* at 117 n. 2, 104 S.Ct. at 455 n. 2. The Court, however, reversing the district court and court of appeals, concluded that the error was harmless. Although recognizing that the question of whether a constitutional error is harmless is one of federal law, it held:

> Nevertheless, the factual findings arising out of the state courts' post-trial hearings are entitled to a presumption of correctness. The substance of the *ex parte* communications and their effect on juror impartiality are questions of historical fact entitled to this presumption. Thus, they must be determined, in the first instance, by state courts and deferred to, in the absence of "convincing evidence" to the contrary, by the federal courts. Here, both the State's trial and appellate courts concluded that the jury's deliberations, as a whole, were not biased. This finding of "fact"—on a question the state courts were in a far better position than the federal courts to answer—deserves a "high measure of deference" and may be set aside only if it "lack[s] even 'fair support' in the record." The absence of a contemporaneous recording will rarely deprive the finding of "even 'fai[r] suppor[t]' in the record."

*Id.* at 120, 104 S.Ct. at 456 (citations omitted).

As in *Rushen*, the state court found that Johnson's case had not been prejudiced by Ball's meeting with Judge Levin or the substance of their communications. We find that there is more than adequate support in the record for this finding. First, we are not at all sure what, if anything, the statement, "The blacks are sticking together," indicates about the jury foreperson's

---

3. If we were to find that the juror's concern and the judge's failure to investigate that concern did not deprive Johnson of a fair trial before an impartial jury, any error committed by the judge in not notifying Johnson's attorney about his meeting with the juror and in not having Johnson present during the meeting would be harmless. If, on the other hand, we were to find that the juror's statement was sufficient to show that the jury foreman was prejudiced, or at least necessitated further inquiry by the judge, then it would have been reversible error not to inform Johnson's attorney and to have Johnson present during the meeting.

4. The State had conceded, in both federal and state court, that the communications constituted constitutional error.

bias or impartiality. He could have been merely reporting an observable fact. On its face, it neither denotes any derogatory characterization nor reflects any hostility or animosity toward anyone or any group. In context, the statement may be a criticism, but there is no evidence in this case to support such an inference. In fact, the record supports just the opposite. In *voir dire*, the foreperson had indicated under oath that he harbored no bias or prejudice. No other juror raised any concern about the foreperson's ability to impartially serve on the jury. After her meeting with the judge, Ms. Ball did not bring to the court's attention any further concerns about the foreperson.[5] And, as the district court observed, the jury's final verdicts—guilty only of manslaughter and a handgun violation as to one killing, and fully acquitted of the murder charges—hardly suggest a jury prejudiced against Johnson. For all of these reasons, we believe that the district court was correct in deferring to the findings in the state post-conviction proceedings that Johnson was not prejudiced by the events at his trial.

Johnson implies that finding the errors in this case to be harmless overlooks the dangers of racial prejudice infecting jury deliberations. We disagree. This court has long been diligent in guarding against the specter of tainted jury verdicts. *See, e.g., United States v. Thompson*, 744 F.2d 1065, 1068 (4th Cir.1984); *Aston v. Warden*, 574 F.2d 1169, 1172 (4th Cir.1978); *United States v. Hankish*, 502 F.2d 71, 77 (4th Cir.1974). We are committed to the proposition that consideration of a person's race has absolutely no valid place in jury deliberations, and we will reverse any conviction that was influenced by the defendant's race.

In the present case, it would have been preferable for Judge Levin to have had Johnson and his attorney present during his conversation with juror Ball or at least to have recorded the conversation and disclosed its substance to Johnson and his counsel. *See Rushen*, 464 U.S. at 119, 104 S.Ct. at 456. However, despite whatever errors may have occurred in the trial judge's handling of his conversation with Ball, we can find no indication that Johnson's conviction was a product of racial prejudice.[6] Moreover, every court examining this case has reached the same conclusion, and under *Rushen* we will defer to the findings of the Maryland state courts on this issue.

### III.

For these reasons, we hold that any errors in Johnson's trial were harmless, and the decision of the district court is

AFFIRMED.

MURNAGHAN, Circuit Judge, dissenting:

Here the question was not the final one of whether the jury was prejudiced. The question was the preliminary, albeit vitally important, one: Whether there were sufficient indications, revealed by juror Ball's contact with Judge Levin, necessitating further inquiry at the time of trial as to whether the jury might be racially prejudiced. To me, sufficient alarms of distinct possible prejudice had been sounded. Juror Ball expressed to Judge Levin her opinion that the foreperson on the jury was racially biased based on the foreperson's statement that "the blacks were sticking together." Though not conclusive, the most probable inference to be drawn, given that the remark was made by the fore-

---

5. The deposition transcript of Ms. Ball was introduced at the second post-conviction hearing. At her deposition, Ms. Ball denied telling Judge Levin that she thought the foreperson was prejudiced. She said her concern related to the possibility of some psychiatric history in the foreperson's family approximately twenty years prior to the trial that was not revealed in responses to *voir dire*. Judge Johnson, however, accepted Judge Levin's testimony as more accurate.

6. Adopting Johnson's reasoning would require trial judges to conduct a *voir dire* in mid-trial every time any juror alleges that another juror is racially prejudiced, regardless of whether the allegations had any rational basis and regardless of how extensive the pre-trial *voir dire* had been on that subject. Such a requirement would be unnecessary in many cases and would infringe upon the trial judge's exercise of discretion.

person to other jurors in the course of the trial, was one of ascription of motive or intent by reason of race. The young black defendant had shot two white policemen to death. The procedure of the case to trial involved an intense publicity, newspaper and other, centering on the racial character of the black defendant as contrasted with that of the white policemen. As a life-long resident of Maryland, I cannot close my eyes to the fact that race has permeated the atmosphere in Maryland's southern counties and that decisions sometimes have depended less on what one did than on the race to which one belongs.

In short, alerting counsel for the defendant and the defendant himself was, at a most critical phase, necessary if there was to be a fair trial. Insuring a fair trial, to the greatest possible extent, is *the* reason, above all others, for our existence. An adequate inquiry, with participation by someone with the defendant's interest at heart and actuated by the motive to ascertain whether there was prejudice in the jury, was essential. Perhaps there was jury prejudice, perhaps not, but the situation had developed to the point where an adequate answer should have been sought. Perhaps, in the end, it might not have helped the defendant. Perhaps, however, it might have done so. In any event, a fairer trial would have been the result if the inquiry had been permitted to take place.

The panel majority dismisses the error as "harmless" in light of, and in deference to, the state courts' findings of harmlessness. The panel, following *Rushen v. Spain*, 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983), concludes that the record does not contain "convincing evidence" to disturb the state courts' findings. But the record lacks "convincing evidence" contrary to the state courts' conclusions for the simple reason that the record is nearly devoid of any probative information about juror Ball's *ex parte* contact with Judge Levin and her expressed position that the jury's foreperson was racially biased. That absence of information is not surprising given that the post-trial hearing, precipitated by counsel's delayed discovery of the judge's ne-

glect, occurred more than one year after the trial had ended.

It seems to me that *Rushen v. Spain* —holding that a post-trial hearing is an adequate initial remedy for a judge's concealment of potential juror bias—requires a "meaningful" post-trial hearing. A meaningful opportunity to inquire into whether the judge's error affected the fairness of Johnson's trial also seems mandated by *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), in which the Supreme Court proclaimed that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless *beyond a reasonable doubt.*" 386 U.S. at 24, 87 S.Ct. at 828 (emphasis added).

Given the length of time between the conclusion of Johnson's trial and the post-trial hearing, *i.e.*, more than one year—in contrast to the hearing in *Rushen v. Spain* that occurred shortly after trial—it cannot be said that the hearing to investigate the fairness of the trial was meaningful. Even Judge Levin admitted that he could not remember much of what had transpired with juror Ball. Expecting Johnson to disprove the state courts' findings of harmlessness on the basis of the record as it stands is expecting too much when those findings were based on a sparsity of probative information.

The panel majority also notes that the jury's verdicts do not suggest a jury prejudiced against Johnson. But verdicts of not guilty of murder but guilty of manslaughter also afford an adequate basis for concluding that a compromise by the jurors so they could achieve a result and go home was reached, not that the jury impartially decided beyond a reasonable doubt that Johnson was guilty of one crime yet not guilty of another.

I respectfully dissent.