16 F.3d 413
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Demetrius HOWARD, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
William WILEY, a/k/a Bill, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellant.
v.
Pernell DECK, a/k/a Tony, Defendant-Appellant.
 Nos. 93-5132, 93-5133, 93-5217.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 29, 1993.
Decided: Jan. 27, 1994.
 
 Appeals from the United States District Court for the Northern District of West Virginia, at Wheeling. Frederick P. Stamp, Jr., District Judge.
 Douglas Leonard Price, Anstandig, Levicoff & McDyer, P.C., Pittsburgh, Pennsylvania, for appellant Howard;
 Jeffrey W. McCamic, McCamic & McCamic, Wheeling, West Virginia, for appellant Wiley.
 William R. Metzner, Sr., Metzner Law Office, Wheeling, West Virginia, for appellant Deck.
 Paul Thomas Camilletti, Assistant United States Attorney, United States Attorney's Office, Wheeling, West Virginia, for appellee.
 David E. Godwin, Acting United States Attorney, Sam G. Nazzaro, Assistant United States Attorney, Lisa A. Grimes, Assistant United States Attorney, Wheeling, West Virginia, for appellee.
 N.D.W.Va.
 AFFIRMED IN NO.S 93-5132 AND 93-5217, AND AFFIRMED IN PART AND REVERSED IN PART IN NO. 935133.
 Before NIEMEYER, Circuit Judge, CHAPMAN, Senior Circuit Judge, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Demetrius Howard, William Wiley, and Pernell Deck were indicted for various violations of Title 21 and Title 18 of the United States Code. Count 1 of the seven-count indictment charged that the three defendants were involved in a conspiracy to possess with intent to distribute and to distribute crack cocaine during the period from January to June, 1992, in violation of 21 U.S.C.Secs. 846, 841(a)(1). Counts 2 and 3 charged Wiley with falsifying a federal firearms application form and with illegally possessing a firearm in violation of 18 U.S.C. Secs. 922, 924. Count 4 charged Deck and Wiley with aiding and abetting each other in the distribution of crack cocaine on January 14, 1992, and Count 5 charged the same two defendants with aiding and abetting each other in the use and carrying of a firearm on the same date. Count 6 charged Howard with distribution of crack cocaine on January 16, 1992, and Count 7 charged Deck with distribution of crack cocaine on May 27, 1992. The jury convicted Howard on all counts in which he was charged (Counts 1 and 6); it convicted Deck on Counts 1, 4, and 7 and acquitted him of Count 5; and it convicted Wiley of Counts 2, 3, and 4 and acquitted him of Counts 1 and 5. After individual sentencing hearings, Howard was sentenced to a term of 52 months imprisonment; Wiley to 54 months; and Deck to 78 months.
 
 
 2
 The defendants now challenge various aspects of their trials and sentences which we address in the order presented in their appeals.
 
 
 3
 * First, all defendants contend that members of the jury venire were improperly tainted by their exposure to prejudicial publicity from an anti-drug campaign which was taking place in Wheeling, West Virginia and in the courthouse at the time of defendants' trial. After a publicized drug-related death of an officer in 1985, community leaders in Wheeling began an annual campaign for a unified and visible commitment toward "The creation of a Drug Free America" to take place for one week in October. The campaign is symbolized by a red ribbon and the slogan, "The Choice For Me ... Drug Free," and the active participation is indicated in public schools and public buildings by the wearing of a red ribbon.
 
 
 4
 At the time of defendants' trial, the red ribbons were worn by courthouse officials, including the United States attorneys, and even some members of the venire. The ribbons and the promotion literature made no reference to any need to prosecute specific persons charged with drug offenses and made no mention of the defendants in this case. One member of the venire assembled for the selection of juries in the defendants' case, as well as for an unrelated case, indicated, during jury selection of the other case, that she had worked actively on the drug-free campaign and that she might find it difficult to sit objectively on a drug case as a juror. The woman was then excused, along with two others to whom she had spoken. Previously, during the course of voir dire for the defendants' case, the court asked traditional questions inquiring into jury bias, including whether the potential jurors were aware of anything which would preclude them from rendering a fair and impartial verdict, to which no one responded. Counsel for the defendants, nevertheless, asked the United States attorneys to remove their ribbons during the course of the trial and requested further voir dire about any potential prejudicial effects caused by the campaign. The court refused to order removal of the ribbons and refused any further jury inquiry. The court reasoned that while evidence was presented that the jurors were exposed to the drug-free campaign, since it was publicized throughout the Wheeling area in the media, there had been "no particularized showing of prejudice to these defendants at this time.... [T]his is apparently a universal type of week that is going on all over and I don't believe that there has been any particularized prejudice shown by that." Nevertheless, the United States attorneys accommodated the request by removing their ribbons.
 
 
 5
 The defendants now contend that the trial court erred in refusing to question the potential jurors specifically about the effect that the anti-drug campaign might have had on their duties as jurors and in refusing to give cautionary instructions to the jury. Relying on our holding in United States v. Hankish, 502 F.2d 71 (4th Cir.1974), the defendants argue that we should order a new trial.
 
 
 6
 In Hankish, the district court had refused to poll the jury at the defendant's request after publication of a newspaper story about the defendant which characterized him as a racketeer and the director of a multi-state theft ring. In ordering a new trial, we stated, "when highly prejudicial information may have been exposed to the jury, the court must ascertain the extent and effect of the infection, and thereafter, in its sound discretion, take appropriate measures to assure a fair trial." 502 F.2d at 77. We allowed, however, that not every news story requires such a court response, and unless there is substantial reason to fear prejudice, the court might properly refuse to question the potential jurors about the story. Id.
 
 
 7
 We believe that the facts in this case are distinguishable from those presented in Hankish. The publicity in this case was in no way directed to the trial or the defendants. It was not even directed to the effort of law enforcement authorities to enforce the drug laws. Rather, it was a generalized community campaign aimed at urging the public to refrain from using drugs and to remain drug free. Having found no evidence of particularized prejudice, the court properly refused to interrogate the jury or take the other steps requested. We believe that the circumstances presented to the district judge in this case did not require something more than the general voir dire inquiry undertaken by the court, and that the court did not abuse its discretion in refusing the defendants' request for further voir dire.
 
 II
 
 8
 The defendants next contend that the court's instructions to the jury on the elements of a conspiracy were erroneous because they failed to inform the jury that a "conspiracy is not shown until the government has presented evidence of a specific agreement to commit a specific crime, for the same criminal purpose, on the part of the defendants or any two of them." The defendants, Howard and Deck (Wiley was acquitted of this charge), contend that the instructions given by the district court were "too loosely-worded and nebulous." The defendants acknowledge, however, that no instruction actually given was a misstatement of the law. They simply contend that the instructions given were inadequate and tended to suggest to the jury a threshold too low to prove a conspiracy.
 
 
 9
 Based on our review of all of the instructions given by the district court, we cannot agree with the defendants' argument. Taken as a whole, the instructions fairly contemplate an agreement or plan as articulated in the law of conspiracy. See United States v. Bell, 954 F.2d 232 (4th Cir.1992), cert. denied, 114 S.Ct. 112 (1993). For instance, the district court instructed:
 
 
 10
 A person may become a member of the conspiracy without full knowledge of all the details of the unlawful scheme or the names and identities of all the other alleged conspirators. So if a defendant has an understanding of the unlawful nature of the plan and knowingly and wilfully joins in that plan on one occasion, that is sufficient to convict him for conspiracy even though he had not participated before and even though he played only a minor part.
 
 
 11
 (Emphasis added). The court also stated in the instructions that "[t]here can be no conspiracy where the persons have no joint objective or common purpose." We are satisfied that the instructions, taken as a whole, fairly and properly advised the jury on the law of conspiracy, and that the district court did not abuse its discretion in selecting the language it did.
 
 III
 
 12
 Wiley next contends that the evidence offered to convict him under Count 4 of aiding and abetting Deck in the distribution of crack cocaine was insufficient for a conviction. The government contended that Wiley was present at the Zane Athletic Club on January 14, 1992, when Deck sold crack cocaine to a confidential informant, Richard Jefferson, and that Wiley was acting as a lookout.
 
 
 13
 The evidence presented by the government at trial was that Jefferson and Deck agreed in advance to a drug transaction, which was to be consummated at the Zane Athletic Club. As Jefferson approached the club to buy the drugs from Deck, he saw Wiley standing in close proximity to Deck. Although Jefferson spoke with Deck for the purpose of consummating the purchase, nothing was said between Jefferson and Wiley. In fact, the evidence showed that Jefferson and Deck moved away from Wiley, to the side of the building, to consummate the deal. After the transaction, Jefferson asked Wiley what he was doing and whether he was going to shoot Jefferson. Apparently, Wiley had been standing with his hands in his pockets and there was some question about whether Wiley had a gun in his hand. To Jefferson's question, Wiley replied, "No." Wiley then explained that he was worried about a white car parked up the street. The government offered evidence showing that the white car was in fact a government surveillance vehicle. This was the sum and substance of the government's evidence against Wiley on Count 4. No evidence was offered that Wiley knew about the drug transaction or that he played any role in it, or that Wiley was doing anything for Deck at the time.
 
 
 14
 Wiley testified on his own behalf, explaining that he had just been released from a period of house arrest the day before and had come to the club, where by chance, he came upon Deck whom he knew. Wiley said he greeted Deck, saying "Hey, man, what's up, long time no see," and Deck responded in like manner. Then, Jefferson, whom Wiley also knew, came up and motioned Deck aside. Wiley stated that Deck and Jefferson went around the corner and returned, after which Deck asked Wiley if he was going to shoot him. Wiley testified that he had his hand in his pocket looking for some money because he thought the bartender had "short-changed" him. Wiley also testified that when Wiley said "no," and pulled his hand out of the pocket to show only money and keys, both Jefferson and Deck laughed. Wiley further explained that he was watching the white car because people were in it, yet no one was getting out. Wiley denied any knowledge about a drug deal, arguing that he was arrested for being in the wrong place at the wrong time.
 
 
 15
 Wiley now contends that his mere presence at the transaction, without any knowledge of it, does not implicate him in the crime as an aider and abettor, and that even taking the view of the evidence most favorable to the government, no rational jury could have found him guilty beyond a reasonable doubt. We agree.
 
 
 16
 The only evidence implicating Wiley is the testimony of Jefferson placing Wiley at the scene and attributing to Wiley an expression of concern about a white automobile parked up the street. While there was also evidence that Wiley had his hands in his coat pocket at the time, prompting Jefferson to ask whether Wiley was going to shoot him, the government witnesses in the surveillance vehicle agreed that they never saw a gun. The jury eventually acquitted Wiley of the gun possession charge. There was no evidence to suggest that Wiley had any prior knowledge of the transaction, that he knew one was occurring, or that he was there as a lookout for Deck. In these circumstances, even taking the evidence in a light most favorable to the government, as we must, we believe that the evidence falls short of that necessary to convict Wiley as an aider and abettor in the drug deal between Deck and Jefferson. See Jackson v. Virginia, 443 U.S. 307 (1979). Therefore we reverse Wiley's conviction under Count 4.
 
 
 17
 Because of this ruling we do not address Wiley's arguments relating to his sentencing.
 
 IV
 
 18
 Finally, Deck contends, in challenging his sentencing, that it was improper for the court to have used his testimony, given during trial, to enhance his sentence. He argues that the right to testify should not be burdened by the risk of enhancing one's sentence. We reject this argument. While a defendant cannot be compelled to testify, if he elects to do so, he must bear the potential adverse consequences. See United States v. Lamb, 575 F.2d 1310 (10th Cir.), cert. denied, 439 U.S. 854 (1978); cf. United States v. Dunnigan, 113 S.Ct. 1111 (1993). Accordingly, we conclude that the district court did not err by considering evidence from trial when sentencing Deck, including the testimony given by Deck himself.
 
 
 19
 Deck also challenges the district court's attribution of drug quantities to him. Our review of the record, however, reveals that the district court's findings are adequately supported and that Deck's arguments are without merit.
 
 V
 
 20
 Accordingly, in case No. 93-5133, we reverse Wiley's conviction with respect to Count 4 and affirm his convictions with respect to Counts 2 and 3. In cases No. 93-5132 and No. 93-5217, we affirm.
 
 
 21
 Nos. 93-5132 and 93-5217--AFFIRMED No. 93-5133--AFFIRMED IN PART AND REVERSED IN PART.