67 F.3d 297
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lamont ALLEN, a/k/a Mont, a/k/a Black Jesus, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Lamont Allen, a/k/a Mont, a/k/a Black Jesus, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
James E. Rogers, a/k/a Ricky Duvall, Defendant-Appellant.
 Nos. 94-5178, 94-5179, 94-5364.
 United States Court of Appeals, Fourth Circuit.
 Sept. 13, 1995.
 
 ARGUED: Lee Arnold Christen, Germantown, Maryland, for Appellant Allen;
 Paul Michael Weiss, MARGOLIS, PRITZKER, EPSTEIN, P.A., Towson, Maryland, for Appellant Rogers.
 Bonnie S. Greenberg, Assistant United States Attorney, Baltimore, Maryland, for Appellee. ON BRIEF: Lynne A. Battaglia, United States Attorney, Baltimore, Maryland, for Appellee.
 Before ERVIN, Chief Judge, and MURNAGHAN and MICHAEL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Lamont Allen and James Rogers appeal their convictions and sentences for conspiracy to distribute heroin and other drug crimes. Their primary argument is that the district court erred in failing to grant a mistrial on the grounds that the jury had been exposed to allegedly prejudicial publicity regarding the murder of an alleged coconspirator. They also challenge the district court's factual findings at sentencing. Finding no error, we affirm.
 
 I.
 
 2
 Allen and Rogers were tried in Baltimore, Maryland, in early 1993 on one count of conspiracy to distribute and possess with the intent to distribute heroin and on counts for other drug and money laundering offenses. Before the trial began, the parties submitted a list of potential witnesses to the court for use in voir dire. Those on this list were described to the jury as persons who might testify or be mentioned at trial. One person on the list was Angelo Garrison, an alleged co-conspirator of Allen and Rogers. Garrison was not scheduled to be a witness, although prosecutors planned to play at trial a number of taped conversations between Garrison and Rogers.
 
 
 3
 On April 8, 1992, while the trial was proceeding, Garrison and his three-year-old son were shot and killed while sitting in a car in Baltimore. The murder was highly publicized in the Baltimore newspapers and in radio and television broadcasts. Initially, however, the media did not connect the killing to the pending trial. On the morning of April 12 the trial court raised sua sponte the issue of juror exposure to the publicity, but at that time the defendants asked the court not to poll the jurors.
 
 
 4
 Later that day, a juror who recognized Garrison's name from the witness list asked to speak with the court. The court told her that Garrison was not scheduled to be a witness and that nothing in the media had connected Garrison's death to the trial. The court asked the juror whether she would be able to be fair and impartial. The juror responded that she would have been bothered if Garrison had actually been scheduled to be a witness, but otherwise she would be impartial.
 
 
 5
 On April 14 the Baltimore Sun ran an article on the Garrison slaying. This article stated that Garrison faced drug charges and that his name had been mentioned at the trial of Allen and Rogers. It noted that Garrison's name had been placed on the witness list, although it added that prosecutors had not expected to call him to testify. It quoted Garrison's lawyer as saying that Garrison was not going to testify because doing so would have been Garrison's "death knell" and that "the only way he could have done it was if they would have put him and his whole family in the witness protection program." However, the lawyer added that he did not think the killing was drug related.
 
 
 6
 That morning, several jury members were observed carrying the Sun into the jury room, and the defense requested that the members of the jury be polled regarding their exposure to the article. The court removed all copies of the Sun from the jury room and interviewed all eighteen jurors. All of the jurors indicated that they had not read the article. The court told the jurors that Garrison was not scheduled to be a witness and asked them if they could consider the evidence fairly and impartially. All of the jurors agreed that they could. The court admonished all jurors to avoid exposure to any publicity concerning the case. Allen and Rogers moved for a mistrial based on the pretrial publicity. The motion was denied.
 
 
 7
 Allen and Rogers were convicted on the conspiracy count and all but one of the other counts. At sentencing, the district court found that the conspiracy involved between ten and thirty kilograms of heroin and that that amount was reasonably foreseeable to Allen and Rogers. It enhanced both defendants' offense levels on two grounds. First, after finding that both were "organizers or leaders" of criminal activity involving at least five people, the court applied a four-level enhancement for role in the offense under United States Sentencing Commission, Guidelines Manual, Sec. 3B1.1 (Nov.1994). Second, the court found that Allen and Rogers had threatened two government witnesses and therefore applied a two-level enhancement for obstruction of justice under U.S.S.G. Sec. 3C1.1. It sentenced both Allen and Rogers to life without parole.
 
 II.
 A.
 
 8
 Allen and Rogers first claim the district court erred in denying their motion for a mistrial based on alleged prejudice from the publicity surrounding the Garrison murder. We set out the procedure for a district court to follow in addressing jury exposure to potentially prejudicial material in United States v. Hankish, 502 F.2d 71 (4th Cir.1974), and United States v. McAusland, 979 F.2d 970 (4th Cir.1992). First, the court must determine whether the publicity rises to the level of "substantial prejudicial material." If so, the court must determine whether any jurors have read or heard the prejudicial material. Any jurors that have must be examined individually to determine the effect of the publicity. If no juror indicates that he has read or heard the publicity in question, the court is not required to proceed further.
 
 
 9
 Hankish, 502 F.2d at 77. The court retains discretion to deal with the problem and "should exhaust other possibilities before aborting a trial." Id.
 
 
 10
 We believe the district court properly followed the procedures outlined in Hankish and McAusland. Prior to the April 14 Sun article, none of the publicity surrounding the Garrison murder linked the event to the trial of Allen and Rogers. The district court properly found that this publicity was not substantially prejudicial. Furthermore, even if it had been prejudicial, the defendants themselves initially asked the court not to poll the jury. While one juror recognized Garrison's name from the witness list, she indicated that, given that Garrison was not scheduled to be a witness, she would be able to remain impartial.
 
 
 11
 The court properly found that the April 14 article was substantially prejudicial and took appropriate action. It polled each juror individually to determine whether any juror had read the article. Each juror responded that he or she had not. Under Hankish the district court was not required to take further action, and it therefore did not abuse its discretion in refusing to grant the defendants' motion for a mistrial.
 
 B.
 
 12
 Allen and Rogers next challenge the district court's factual findings at sentencing. We review these findings for clear error. United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989).
 
 
 13
 First, Allen and Rogers challenge the district court's finding that they were "organizers or leaders" of a criminal enterprise involving five or more participants and accordingly its enhancement of their sentences by four levels under U.S.S.G. Sec. 3B1.1. Evidence at trial established that the conspiracy involved more than five members, and therefore the only issue is the defendants' roles within the organization. In determining a defendant's role in the offense, the sentencing court may consider factors including the defendant's decision-making authority, recruitment of accomplices, participation in the commission of the offense, and control or authority over others. U.S.S.G. Sec. 3B1.1, comment. (n.4).
 
 
 14
 Evidence at trial showed that Rogers was one of the instigators of the conspiracy and that he ordered heroin for the organization, negotiated price with the suppliers, and recruited other members into the conspiracy. While Rogers was incarcerated for part of the duration of the conspiracy, the court found, on the basis of transcripts of telephone conversations, that he maintained control over the organization by instructing other members. The court was not clearly erroneous in finding Rogers an organizer or leader of the conspiracy. United States v. Banks, 10 F.3d 1044, 1057 (4th Cir.1993), cert. denied, 114 S.Ct. 2681 (1994).
 
 
 15
 Evidence at trial showed that Allen had primary responsibility for running the stashhouses and distribution centers throughout the duration of the conspiracy. In this capacity he exercised decision-making authority over the workers at the stashhouses. Furthermore, evidence indicated that after Rogers was incarcerated, Allen on several occasions dealt directly with suppliers along with the other leaders of the conspiracy. The district court did not clearly err in finding Allen to be an organizer or leader. Id.
 
 
 16
 Second, Allen and Rogers challenge the district court's finding them responsible for between ten and thirty kilograms of heroin. A conspirator is liable for any action of the conspiracy that is "within the scope of [his] agreement and reasonably foreseeable to [him]." United States v. Gilliam, 987 F.2d 1009, 1012-13 (4th Cir.1993). Because Allen and Rogers were properly found to be "organizers or leaders" of the conspiracy, they may be held accountable for the entire amount of drugs that it involved. Banks, 10 F.3d at 1057. The court's finding that the conspiracy involved over ten kilograms of heroin was based largely on the testimony of Osita Nwabuko, the organization's primary source. Nwabuko testified that he supplied the conspiracy with at least 10,600 grams of heroin.
 
 
 17
 Allen and Rogers raise two challenges to Nwabuko's testimony. First, they claim that Nwabuko was unreliable because he was testifying pursuant to a plea agreement with the government and had admitted that he previously lied to law enforcement authorities. These factors pertain only to Nwabuko's credibility, a determination which lies solely within the province of the trier of fact. United States v. Singh, 54 F.3d 1182, 1186 (4th Cir.1995). We will not second guess the district court's decision to believe Nwabuko.
 
 
 18
 Second, Allen and Rogers note that 3,400 grams of the 10,600 grams of heroin to which Nwabuko testified was found on him when he was arrested at Newark Airport. They claim that they were unaware of this amount, that it was not reasonably foreseeable to them, and that it was not within the scope of their agreement. However, Nwabuko testified that he brought it from Nigeria at Rogers' direction and that it was to be delivered to the conspiracy. The district court could reasonably have believed Nwabuko, and therefore the court did not clearly err in finding that the conspiracy involved over 10 kilograms of heroin.
 
 
 19
 Finally, Allen and Rogers claim the district court erred in enhancing their offense level by two steps for obstruction of justice under U.S.S.G. Sec. 3C1.1. This enhancement was based on the district court's finding that Allen and Rogers attempted to intimidate government witness Vincent Thomas and that Rogers tried to intimidate Nwabuko.* Allen and Rogers do not appear to dispute that they threatened Nwabuko and Thomas, but they claim that the record does not establish that these threats were made for the purpose of changing those witnesses' trial testimony. They point especially to the fact that their alleged threats to Thomas occurred after he had testified. However, even a threat made after a witness has testified may constitute obstruction of justice. It may deter future cooperation by that witness (at sentencing, for example), United States v. Woods, 976 F.2d 1096, 1103 (7th Cir.1992); United States v. Weston, 960 F.2d 212, 218 (1st Cir.1992), or have an intimidating effect on other witnesses who have not yet testified. At Allen's and Rogers' sentencing hearing Thomas testified that they had threatened him while their trial was under way. Thomas testified that directly after his testimony Allen told him "it won't be funny when [we] catch up with [you]" and that "Allen then proceeded to [draw] his finger across his neck." After Thomas was returned to the cellblock, Allen and Rogers continued to yell threats at him, with Allen saying he planned to shoot him and
 
 
 20
 with Rogers threatening his family. This behavior could well have been an attempt to prevent Thomas from cooperating further or to intimidate witnesses who had not yet testified. The district court did not err in applying an enhancement for obstruction of justice.
 
 III.
 
 21
 For the foregoing reasons, we affirm the convictions and sentences of Allen and Rogers.
 
 AFFIRMED
 
 
 *
 An example of obstruction is "threatening, intimidating, or otherwise unlawfully influencing a ... witness." U.S.S.G. Sec. 3C1.1, comment. (n.3(a))