**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-4795**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MERRILL ROBERTSON, JR.,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. John A. Gibney, Jr., District Judge. (3:16-cr-00133-JAG-1)

Argued: October 30, 2018                                Decided: February 5, 2019

Before FLOYD and HARRIS, Circuit Judges, and Donald C. COGGINS, Jr., United States District Judge for the District of South Carolina, sitting by designation.

Vacated and remanded by unpublished per curiam opinion.

**ARGUED:** Patrick Risdon Hanes, WILLIAMS MULLEN, Richmond, Virginia, for Appellant. Katherine Lee Martin, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Jonathan T. Lucier, WILLIAMS MULLEN, Richmond, Virginia, for Appellant. Tracy Doherty-McCormick, Acting United States Attorney, Alexandria, Virginia, Stephen E. Anthony, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant Merrill Robertson, Jr., was charged in a fifteen-count superseding indictment related to a large investment and bank fraud scheme. Robertson remained out on bond during his lengthy trial. However, on the last day of trial, after Robertson testified, the trial court sua sponte convened a bond revocation proceeding. During the hearing, and outside of the presence of the jury, the trial court made a number of prejudicial remarks about Robertson's character and credibility and revoked Robertson's bond. The following morning, the Richmond Times-Dispatch published an article about Robertson's trial, which quoted several of the trial court's prejudicial remarks. Over Robertson's objection, the trial court declined to inquire about the jury's exposure to the specific article. Thereafter, the jury convicted Robertson of all counts, and the trial court sentenced Robertson to 480 months' incarceration.

Robertson raises five issues in this appeal. First, Robertson contends the trial court abused its discretion in failing to determine whether jurors were exposed to the trial court's statements reprinted in the Richmond Times-Dispatch. Second, Robertson argues his 480-month sentence is procedurally and substantively unreasonable. Third, Robertson seeks a judgment of acquittal on Count Five, arguing the Government failed to prove his statements were material. Fourth, Robertson contends his convictions on Counts One through Nine must be vacated because the trial court improperly instructed the jury on the definition of "material." Finally, Robertson seeks consideration of additional issues under *Anders v. California*, 386 U.S. 738 (1967). As detailed below, we agree as to Robertson's first issue and vacate his convictions and sentence.

3

I.

Robertson was the co-owner of a private investment company, Cavalier Union Investments. From 2008 to 2016, Robertson and his partner collected large sums of money from investors. By 2015, investors began to ask for the return of their investments, but Robertson had spent most of the money. As a result, Robertson and several other individuals submitted falsified loan applications to a number of financial institutions. Thereafter, a grand jury returned a fifteen-count superseding indictment charging Robertson with conspiracy to commit mail and wire fraud, mail fraud, wire fraud, conspiracy to commit bank fraud, bank fraud, and engaging in unlawful monetary transactions.

Robertson proceeded to trial. Following his testimony, the trial court discharged the jury and informed the parties that it would be holding a hearing to reevaluate Robertson's pretrial release, noting that Robertson "is not a truthful person, and that he will do anything he needs to do to protect himself." In light of this unexpected turn of events, the trial court gave Robertson and his counsel a short time to prepare for the hearing. When the trial court reconvened later that evening, the Government argued for revocation of Robertson's pretrial release due to "the risk of flight" and "[t]he lack of constant connections." Robertson opposed revocation of his bond, arguing that he had been generally compliant with the terms of his pretrial release and that nothing had changed regarding his connections to the community or risk of flight. After considering the parties' arguments, the trial court revoked Robertson's bond based on the overwhelming "weight

4

of the evidence against him," his "demonstrably false" testimony, and "his willingness to victimize the people who are closest to him."

The following morning, the Richmond Times-Dispatch quoted some of the trial court's comments on the front page of the Metro section in an article titled, "Ex-U.Va. football player's bond revoked in fraud trial" and subtitled, "Judge calls former Chesterfield resident 'not a truthful person.'" Based on the publication of this article, Robertson moved for a mistrial. The trial court took the motion under advisement,[1] apparently recognizing the potential for significant prejudice because the jurors were not sequestered and may have been exposed to the article or headline. To determine the potential exposure, the trial court told the parties, "[w]hen [the jurors] come back[,] I will ask if anybody read anything about the case, or heard anything. If they have, what I will do is have them come up and ask them what they have seen and heard individually, and see where we go from there." Robertson also requested that the trial court "inquire as to whether [jurors] received the Richmond Times Dispatch in their home." Initially, the trial court expressed a willingness to inquire about this point, but deferred resolving the issue until the parties discussed the jury instructions.

After the charge conference, the trial court informed the parties that he was "not going to ask [jurors] about the Times Dispatch" because he didn't "want [jurors] to go dig out a bunch of old Times Dispatches and start reading them tonight if they are still

---

[1] The record reflects that the motion for mistrial was denied during the jury's first day of deliberations.

[deliberating] then." Robertson objected to the trial court's proposed limited questioning of the jury and also asked the trial court to inquire if the jurors heard anything about the article or the trial court's comments on the radio. The trial court overruled Robertson's objections and brought the jury into the courtroom. The trial court then polled the jury, stating, "Let me just ask you. Have any of you during the course of the trial heard or read anything about the case?" The jurors responded in the negative, and the trial proceeded to closing statements and jury instructions.

At the conclusion of closing statements and jury instructions, the trial court discharged the jury for the evening. The following morning, the trial court did not question the jurors about any exposure to the article prior to deliberations beginning. The jury deliberated for almost two days before finding Robertson guilty on all counts. After the verdict, Robertson filed a Motion for a New Trial, based largely on the trial court's failure to question the jury specifically about the Richmond Times-Dispatch article, and a Motion for Judgment of Acquittal on Counts Five and Ten through Fifteen. The trial court denied both motions. At the sentencing hearing, the trial court varied upwards from Robertson's guidelines range and sentenced him to 480 months' incarceration.

Following sentencing, Robertson filed a notice of appeal, raising the five issues set forth above. As we find Robertson's first issue warrants vacating his convictions and sentence, we focus our discussion on that issue. However, because Robertson also raises a challenge to the sufficiency of the evidence as to Count Five of the superseding indictment, we find it prudent to conclude by briefly addressing that issue in light of potential double jeopardy concerns.

6

## II.

Under Rule 33 of the Federal Rules of Criminal Procedure, the trial court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. The decision whether to grant or deny a motion for a new trial is committed to the broad discretion of the trial court, and should be disturbed only when the trial court abuses its discretion. *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003). "[W]hen highly prejudicial information may have been exposed to the jury," the trial court abuses its discretion if it fails to "ascertain the extent and effect of the infection" and does not "take appropriate measures to assure a fair trial." *United States v. Hankish*, 502 F.2d 71, 77 (4th Cir. 1974) (citations omitted).

## III.

"[T]he procedure required by this Circuit where prejudicial publicity is brought to the court's attention during a trial is that the court must ascertain if any jurors who had been exposed to such publicity had read or heard the same." *Id.* Jurors who indicate they have been exposed to the publicity in question must "be examined, individually and outside the presence of the other jurors, to determine the effect of the publicity." *Id.* This procedure "open[s] the way for appropriate corrective measures–cautionary instructions, excusing individual jurors when alternates are available, or a mistrial if nothing else will cure the prejudice." *Id.* (internal footnotes omitted).

The initial inquiry, therefore, is whether the publicity is prejudicial to the defendant. *See id.* ("We do not hold that every newspaper article appearing during trial requires such protective measures. Unless there is substantial reason to fear prejudice, the trial court may

decline to question the jurors." (citations omitted)).  As we have previously held, "[i]nformation is prejudicial if it is substantially adverse to a defendant, has not been presented to the trial jury in court and is not properly admissible in the trial." *United States v. Gray*, 788 F.2d 1031, 1033 (4th Cir. 1986) (citations omitted).  Under this rubric, the Richmond Times-Dispatch article is prejudicial, because the headline reflects the trial court's characterization of Robertson as "not a truthful person."  The trial judge's remarks were adverse to Robertson and would have been inadmissible comments on the facts if made in the presence of the jury.[2]  Indeed, in any trial where a defendant testifies, the jury's credibility determination is of paramount importance, and we hold that the trial court's comments about Robertson's credibility would have been prejudicial if read or heard by a juror.

In light of the prejudicial nature of the publicity, we must next determine whether the trial court properly "ascertain[ed] the extent and effect of the infection" and took "appropriate measures to assure a fair trial." *Hankish*, 502 F.2d at 77 (citations omitted).  Here, the trial court generally asked the jurors if they had heard or read anything about the case.  That inquiry is insufficient under this Court's well-established precedent, which requires the trial court to specifically question jurors about their exposure to the prejudicial publicity in question.  *Id*.  The trial court's general question was insufficient to determine whether any jurors had been exposed to the Richmond Times-Dispatch article, for a juror

---

[2] The Government concedes in its brief that the trial judge's comments were prejudicial.

8

could fairly answer the trial court's general question in the negative if she saw the prejudicial headline but did not read the article. We emphasize that there is no specific question or questions that must be asked by a trial court in these cases. Trial courts have ample discretion to fashion their questioning to determine whether jurors have been exposed to specific publicity without further prejudicing the defendant. For example, the trial court in this case could have posed a series of questions beginning with asking which jurors subscribe to or regularly read the Richmond Times-Dispatch and then narrowing the questioning to determine whether any jurors saw the headline in question. Indeed, there are innumerable ways for a trial court to question jurors in such a situation, and we emphasize that trial courts have broad discretion to fashion an appropriate remedy if there is exposure to prejudicial publicity.

Accordingly, we hold the trial court abused its discretion in failing to question the jurors specifically about their exposure to the Richmond Times-Dispatch article. Robertson offers two alternative remedies for this abuse of discretion—a new trial or remanding the case so that the trial court may attempt to recall the jurors and question them about their in-trial exposure to the article in question. *See United States v. Thompson*, 908 F.2d 648, 655 (10th Cir. 1990) (establishing a procedure for recalling jurors to attempt to determine in-trial exposure to prejudicial publicity). While the latter remedy may be warranted in the appropriate case, we find that a new trial is necessary to ensure compliance with the constitutional imperative that Robertson receive a fair trial.

IV.

Turning to Robertson's remaining issues raised in this appeal, the Court need not

9

address the reasonableness of Robertson's sentence or the propriety of the jury instructions in light of our grant of a new trial; however, the Court finds it prudent to address the sufficiency of the evidence as to Count Five of the superseding indictment at this time, because double jeopardy would bar a retrial of this claim if Robertson were to prevail. For the reasons set forth below, we reject Robertson's argument on this issue, as it is premised on a fundamental misunderstanding of this Court's precedent.

We review *de novo* a trial court's denial of a motion for judgment of acquittal. *United States v. Clarke*, 842 F.3d 288, 297 (4th Cir. 2016). "A defendant who brings a sufficiency challenge bears a heavy burden, as '[a]ppellate reversal on grounds of insufficient evidence . . . [is] confined to cases where the prosecution's failure is clear.'" *Id.* (alteration in original) (internal citation omitted) (quoting *United States v. Green*, 599 F.3d 360, 367 (4th Cir. 2010)). The denial of a motion for judgment of acquittal should be affirmed if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)).

By way of brief background, Count Five of the superseding indictment alleged that Robertson committed mail fraud by engaging in a scheme to defraud his childhood Sunday School teacher—Carolyn Banks—out of her retirement benefits. The Government adduced evidence at trial that Ms. Banks initially approached Robertson and told him that she wanted to move her retirement funds to Cavalier Union Investments so she could gain greater control over her money. To effectuate this transaction, Ms. Banks entered into a

promissory note with Robertson, in which Robertson agreed to double Ms. Banks' money in two years. The promissory note further guaranteed Ms. Banks that her retirement savings were secured by equipment, fixtures, inventory, and accounts receivable. Rather than transferring Ms. Banks' retirement funds to a Traditional IRA—as Robertson promised to do—Robertson instead deposited the money into a Cavalier Union Investments' bank account that was overdrawn by more than $2,000 and quickly spent nearly $120,000 of Ms. Banks' money on personal expenses, including a large credit card payment and trips to Tacoma, Washington and Honolulu, Hawaii.

Despite the ample evidence offered at trial by the Government that Robertson misled Ms. Banks about the investment of her retirement funds, Robertson contends that he is entitled to a judgment of acquittal because Ms. Banks testified that she did not invest with Robertson based on anything specific that Robertson said or omitted, instead investing so that she had more control over her money. Thus, Robertson contends that he did not misrepresent or conceal a material fact, as any misrepresentation or concealment could not have influenced Ms. Banks' likely or actual behavior. This argument is plainly foreclosed by this Court's decision in *United States v. Raza*, 876 F.3d 604 (4th Cir. 2017).

In *Raza*, this Court reiterated the long-standing principle that materiality is evaluated under an objective standard in mail, wire, and bank fraud schemes targeting private entities or individuals. 876 F.3d at 614–21. In doing so, we detailed the lengthy history of applying an objective materiality standard in such cases. *Id.* We further noted that the subjective materiality standard articulated by the Supreme Court in *Universal Health Services v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016)—a False Claims

11

Act case—likely does not extend "beyond the context of qui tam actions," which are "civil proceeding[s] that protect[] the federal government." *Raza*, 876 F.3d at 620. Therefore, we are bound by our well-established precedent requiring materiality to be proven under an objective standard. Under this objective standard, we agree with the Government that there is substantial evidence such that a reasonable person would find Robertson's representations about the growth rate and secured nature of Ms. Banks' investment to be material.[3] Accordingly, we hold that the trial court applied the correct standard of materiality and properly denied Robertson's motion for judgment of acquittal.

V.

For the foregoing reasons, we vacate the judgment of conviction and remand for proceedings consistent with this opinion.[4] In light of our holding, we need not reach Robertson's remaining assignments of error.

*VACATED AND REMANDED*

---

[3] Additionally, we note that the Government introduced evidence that Robertson's misrepresentations and concealment were subjectively material to Ms. Banks, as Ms. Banks testified that she "was focused on what [she] was going to get back . . . from the investment' and never gave Robertson permission to spend her investment funds for his own personal use.

[4] Robertson, pro se and through counsel, filed a number of motions, which remain pending. In light of the Court's holding, all pending motions are denied as moot.

12