**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 98-4489

LAFAWN DEWAYNE BOBBITT, a/k/a
Mandingo, a/k/a Dingo,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 98-4490

RASHI TAQUE JONES, a/k/a Ra, a/k/a
Allah R. Shabazz,
Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CR-97-169)

Argued: October 29, 1999

Decided: January 31, 2000

Before WILKINS and WILLIAMS, Circuit Judges, and
Gerald Bruce LEE, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Amy Milton Curtis, BOWEN, BRYANT, CHAMPLIN & CARR, Richmond, Virginia; Steven D. Benjamin, BENJAMIN & DESPORTES, P.C., Richmond, Virginia, for Appellants. Kenneth E. Melson, Assistant United States Attorney, Steven John Mulroy, Special Assistant United States Attorney, Alexandria, Virginia, for Appellee. **ON BRIEF:** Betty Layne DesPortes, BENJAMIN & DESPORTES, P.C., Richmond, Virginia, for Appellants. Helen F. Fahey, United States Attorney, Alexandria, Virginia; Nicholas Altimari, Assistant United States Attorney, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Lafawn Dewayne Bobbitt and Rashi Taque Jones appeal their convictions on numerous charges arising from the robbery of a bank. Finding no error, we affirm.

I.

The facts, viewed in the light most favorable to the Government, see Glasser v. United States, 315 U.S. 60, 80 (1942), are as follows. On January 30, 1997, Bobbitt and Jones entered a NationsBank in Richmond, Virginia with the intent to rob it. Appellants had with them an AR-15 semi-automatic assault rifle and a TEC-9 semi-automatic pistol. Bobbitt opened fire without warning, killing one employee and wounding another and a customer. Bobbitt also exchanged fire with a security guard, wounding him. As they were leaving the bank with over $10,000, both men exchanged fire with a

2

police officer who responded to the scene after hearing gunshots; the police officer was unhurt.

Appellants ran from the bank and through a cemetery. A witness saw a cloud of red mist in the cemetery, consistent with the explosion of a dye pack, a security device used by banks that is activated when stolen money is removed from the bank, causing an emission of red dye that stains all with which it comes into contact. Police dogs were used to trace the men to a house, which was later determined to have been burglarized.

A search of the bank, cemetery, and house revealed, among other items, guns, ammunition, cans of lighter fluid, and a tape recorder containing a cassette tape. Bobbitt's fingerprints were found on the cassette tape and on one of the cans of lighter fluid, which had been purchased at a store near Bobbitt's home. A hat similar to one that Jones had been known to wear was found in the cemetery near other evidence from the crime. Clothing and other items associated with the bank robbery and with Bobbitt and Jones were found in the house. DNA analysis performed on stains from the clothing linked the items to Bobbitt and Jones. On the day of the robbery, Bobbitt and Jones were observed wearing clothing resembling that stolen from the burglarized house.

Soon after the robbery, Bobbitt and Jones were seen entering a room in which two coconspirators, Jermaine Sims and Christopher Sellers, had a large amount of cash spread out on a bed. Later that day, Sims' girlfriend was asked to carry a bag for Sims and Sellers as she accompanied them to a restaurant. She saw money in the bag and was told that it was $10,000 that Sims, Sellers, Bobbitt, and Jones had been saving.

Approximately a week and a half after the robbery, Jones announced that he needed some money, went to a house, and returned with a quantity of wet currency that had a pink tint. Jones was also overheard having a conversation regarding laundering money through drug dealing, and other evidence suggested that Jones was involved in drug dealing.

Appellants were arrested and charged with bank robbery, see 18 U.S.C.A. § 2113(a), (d), (e) (West Supp. 1999), use of a firearm in

3

relation to a violent crime, see 18 U.S.C. § 924(c)(1) (1994), conspiracy to commit those offenses, see 18 U.S.C.A. § 371 (West Supp. 1999), and murder, see 18 U.S.C.A. § 1111 (West Supp. 1999). Additionally, Bobbitt was charged with receiving a firearm while under indictment, see 18 U.S.C.A. § 922(n) (West Supp. 1999), and Jones was charged with being a felon in possession of a firearm, see 18 U.S.C.A. § 922(g)(1) (West Supp. 1999).

At trial, the Government introduced eyewitness testimony and the video surveillance tape from the bank, both of which indicated that one of the robbers was taller than the other. A photogrammetry expert determined, based on the surveillance tape, that one of the men was between 5'11" and 6'3" and the other was between 6'1" and 6'6"; Jones is 5'11-1/2" and Bobbitt is 6'5-1/2". The other two coconspirators, Sims and Sellers, are both too short to have been one of the gunmen. The Government also introduced the testimony of two fellow inmates of Jones. These witnesses testified that Jones had admitted taking part in the robbery and had implicated Bobbitt in the robbery as well.

The evidence at trial also indicated that Appellants engaged in substantial planning and preparation for the robbery. Prior to the robbery, Bobbitt asked an associate, Reginald Pinkston, to purchase a firearm on his behalf. Bobbitt told Pinkston that Bobbitt intended to rob a bank and would make the weapon untraceable. Although Pinkston was arrested before he could complete the purchase, Bobbitt's brother purchased a weapon for Bobbitt.

Sims' girlfriend testified that she overheard Sims, Sellers, and Appellants talking about buying some weapons in advance of the robbery. Sims did in fact purchase the AR-15 semi-automatic assault rifle and the TEC-9 semi-automatic pistol that were used in the robbery. Jones was seen a day or two before the robbery in possession of a weapon that resembled the TEC-9.

On a Friday morning during the trial, defense counsel became aware that one of Jones' lawyers was suffering from some incapacity, although they were unaware of the cause. Concerned that the attorney was incapable of continuing, counsel requested that the court recess early. The court recessed for the weekend, explaining to the jury that

4

one of the defense attorneys had become ill. Before resuming on Monday, the court explained to the jury that the attorney had taken medication to alleviate pain caused by dental work, but that counsel's doctor had assured the court that counsel was no longer incapacitated. The court then asked the jury whether any member would be prevented from being fair and impartial as a result of the unscheduled recess and learning that counsel had a health problem. No juror responded affirmatively.

Appellants were convicted of all charges and now appeal. We address their contentions seriatim.

II.

Jones first maintains that the district court erred in denying his motions to sever his trial from Bobbitt's and to sever the felon-in-possession charge from the other counts. See Fed. R. Crim. P. 14. We review both rulings for abuse of discretion, see United States v. Spitler, 800 F.2d 1267, 1271-72 (4th Cir. 1986); United States v. Rhodes, 32 F.3d 867, 872 (4th Cir. 1994), and find none. When ruling on a motion to sever, a district court "must carefully weigh the possible prejudice to the accused against the often equally compelling interests of the judicial process, which include the avoidance of needlessly duplicative trials involving substantially similar proof." United States v. Jamar, 561 F.2d 1103, 1106 (4th Cir. 1977).

A.

As a general rule, defendants who are indicted together should be tried together, especially when they have been charged with conspiracy. See United States v. Tipton, 90 F.3d 861, 883 (4th Cir. 1996). A defendant is not entitled to severance simply because he may have had a better chance of an acquittal in a separate trial; rather, the defendant must show that there is "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539-40 (1993); see United States v. Williams, 10 F.3d 1070, 1080 (4th Cir. 1993) (stating that a defendant moving for severance must show "that a joint trial would be so unfairly prejudicial that a miscarriage of justice would result").

5

Jones attempts to meet his burden by arguing that because the evidence against Bobbitt was stronger than that against Jones, the jury might have used evidence against Bobbitt in its decision regarding Jones, resulting in a "spillover" effect. This spillover argument is without merit and we have rejected it before. See United States v. Riley, 991 F.2d 120, 125 (4th Cir. 1993). Even if the evidence against Bobbitt was significantly stronger, there was sufficient evidence to sustain Jones' conviction, and the jury was adequately instructed that it must consider each defendant and charge separately based on the evidence applicable to each defendant. This is all that justice requires. See Zafiro, 506 U.S. at 541; Riley, 991 F.2d at 125. Thus, we conclude that the district court did not abuse its discretion in denying Jones' motion to sever his trial.

B.

We also conclude that the district court did not abuse its discretion in denying Jones' motion to sever the felon-in-possession charge. Jones argues that the admission of evidence that he was a convicted felon, which is a necessary element of proof of the felon-in-possession charge, prejudiced him by making it more likely that the jury would convict him of the other charges. We have already decided this issue in a case involving similar circumstances. See United States v. Silva, 745 F.2d 840, 844 (4th Cir. 1984). In Silva, we rejected the argument that a charge under 18 U.S.C.A. § 922 must always be severed from other counts. We noted that

> [o]ne found in the unlawful possession of a firearm will often be charged with another crime involving the use of that firearm. Requiring two trials, one for a charge which requires little more than proof of possession and the existence of the prior record, and one for the underlying criminal charge, would be unnecessarily redundant.

Id.[1] Jones attempts to distinguish Silva on the bases that the other

_____

**1** We also noted in Silva that "[a]ny prejudicial effect of the necessary introduction of the defendant's past conviction can ... be avoided through the use of a limiting instruction." Silva , 745 F.2d at 844. Here, Jones did not request a limiting instruction and the district court did not give one. Jones does not argue, however, that the failure to give such an instruction was error.

6

charges against him were quite serious and that no evidence of prior convictions was introduced against Bobbitt. This attempt to distinguish Silva is unavailing. Offenses involving firearms are often quite serious, a fact that could not have escaped the attention of the Silva panel. Jones' complaint that evidence of prior convictions was not introduced against Bobbitt is little more than a rehashing of his claim that the difference in the strength of the evidence as to Jones and Bobbitt mandated severance of their trials, a claim we have already rejected.

III.

Both Jones and Bobbitt challenge the adequacy of voir dire regarding pretrial publicity. Prior to reporting for jury duty, potential jurors were given a questionnaire that had been developed with the input of counsel. Additionally, the court asked the entire venire a series of questions regarding pretrial publicity. First, the court asked whether anyone had been exposed to pretrial publicity. Of those who answered affirmatively, the court asked whether the exposure had come from an attempt to keep abreast of current events and whether these potential jurors had formed or expressed any opinions regarding the guilt or innocence of Appellants. The court also asked whether those who had been exposed to pretrial publicity had made any attempt to learn more about the case. Appellants themselves were not permitted to ask questions during voir dire.

Appellants maintain that this voir dire procedure was perfunctory, thus preventing them from obtaining sufficient information regarding whether exposure to pretrial publicity had biased potential jurors. Consequently, they claim, it was impossible to challenge prospective jurors for cause and to exercise peremptory strikes in an intelligent manner.

Voir dire is important to ensure that the defendant receives a fair trial. See, e.g., United States v. Lancaster, 96 F.3d 734, 738 (4th Cir. 1996) (en banc) (observing that "[v]oir dire plays an essential role in guaranteeing a criminal defendant's Sixth Amendment right to an impartial jury," in that voir dire "enabl[es] the court to select an impartial jury and assist[s] counsel in exercising peremptory challenges" (internal quotation marks omitted) (alterations in original));

7

United States v. Brown, 799 F.2d 134, 135 (4th Cir. 1986) (noting that "[t]he essential function of voir dire is to allow for the impaneling of a fair and impartial jury through questions which permit the intelligent exercise of challenges by counsel" (internal quotation marks omitted)). The principle governing the conduct of voir dire is that voir dire must be "sufficient to impanel an impartial jury." United States v. LaRouche, 896 F.2d 815, 830 (4th Cir. 1990). We allow the district court broad discretion in conducting voir dire, since trial judges must "`reach conclusions as to impartiality and credibility by relying on their own evaluations of demeanor evidence and of responses to questions.'" Lancaster, 96 F.3d at 738-39 (quoting Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981) (plurality opinion)). "A district court abuses its discretion, however, if the voir dire does not provide a reasonable assurance that prejudice would be discovered if present." Id. at 740 (internal quotation marks omitted).

As the Supreme Court has noted, the discretion of district courts to conduct voir dire is particularly broad in the context of pretrial publicity. See Mu'Min v. Virginia, 500 U.S. 415, 427 (1991); see also United States v. Bakker, 925 F.2d 728, 733-34 (4th Cir. 1991) (allowing district court broad discretion in voir dire exploring potential bias due to pretrial publicity). We conclude that the procedure used in the case before us was well within the broad discretion allowed the district court. See United States v. Bailey, 112 F.3d 758, 769-70 (4th Cir. 1997) (holding that the district court did not abuse its discretion in refusing to conduct individual voir dire concerning pretrial publicity); United States v. ReBrook, 58 F.3d 961, 969 (4th Cir. 1995) (holding that the district court did not err in refusing to permit counsel to participate directly in voir dire concerning pretrial publicity); Bakker, 925 F.2d at 733-34 (concluding that the district court did not abuse its discretion in refusing to submit defendant's written questionnaire to potential jurors, refusing to permit counsel to participate directly in voir dire, or refusing to question potential jurors individually); see also Mu'Min, 500 U.S. at 431-32 (holding constitutional a state court voir dire much like that at issue here). We therefore find this allegation of error to be without merit.**2**

_____

**2** Appellants' argument that the district court abused its discretion by refusing to allow counsel to participate in voir dire by asking follow-up

IV.

Bobbitt asserts that the district court inadequately questioned the jury regarding potential prejudice arising from having witnessed defense counsel in an impaired state.**3**  When the jury is exposed to potentially prejudicial information, the court must"ascertain the extent and effect of the infection, and ... take appropriate measures to assure a fair trial." United States v. Hankish, 502 F.2d 71, 77 (4th Cir. 1974). But, the district court need not even question jurors unless it has first determined, in its sound discretion, that there is a "substantial reason to fear prejudice." Id. We review for abuse of discretion the response of the district court to the jury's exposure to potentially prejudicial information. See United States v. Gray , 788 F.2d 1031, 1032-33 (4th Cir. 1986); Hankish, 502 F.2d at 77.

Bobbitt contends that the "single, leading, unspecific question" posed by the district court was insufficient to determine whether the jury was prejudiced by witnessing counsel's behavior. Brief of Appellants at 25. We disagree. The district court found that counsel had acted no differently than usual prior to the recess. Moreover, counsel's impairment is not obvious from the record: The transcript of the proceedings does not indicate that counsel's speech was so slurred that it could not be understood by the witness or court reporter. Because the district court did not find a "substantial reason to fear

_____

questions is also without merit. Counsel are not entitled to ask voir dire questions, and it was not error for the district court to deny this request. See Bakker, 925 F.2d at 734. Appellants also argue that they were prejudiced by being forced to argue motions to strike jurors for cause in front of the venire. The Government asserts that Appellants waived this argument by failing to request that the venire be excused, and then to challenge the panel, on this ground, when it was selected. See Pigford v. United States, 518 F.2d 831, 834 (4th Cir. 1975) (per curiam). Even if the issue were not waived, Appellants have the burden to prove that jurors were in fact prejudiced, see id., which they have failed to do. Therefore, we conclude there was no error.

**3** The United States asserts that this issue was waived by failure to object at trial. We need not address the waiver argument, since it is clear that the district court did not abuse its discretion in declining to question the jury at length.

prejudice," Hankish, 502 F.2d at 77, and the record reveals none, we conclude that it was within the discretion of the district court to abstain entirely from questioning the jury. We hold that the district court did all that is required and did not abuse its discretion.

V.

Jones claims that the district court erred in refusing to instruct the jury on an "accessory after the fact" charge as a lesser included offense to the robbery charge. "The district court has no discretion to refuse to give a lesser-included instruction if the evidence warrants the instruction and the defendant requests it." United States v. Baker, 985 F.2d 1248, 1259 (4th Cir. 1993). Here, however, Jones was not entitled to the instruction because accessory after the fact is not a lesser included offense of robbery.

One offense is a lesser included offense of another only if "the elements of the lesser offense are a subset of the elements of the charged offense." Schmuck v. United States, 489 U.S. 705, 716 (1989). In comparing the two offenses, a court must consider only the statutory elements of the offenses. See id. at 716-17. We conclude that the offense of being an accessory after the fact to a bank robbery is not a lesser included offense of bank robbery because at least one element of the former--that the defendant gave assistance to the principal after the commission of the crime, see 18 U.S.C.A. § 3 (West Supp. 1999)--is not an element of the latter. See United States v. Rivera-Figueroa, 149 F.3d 1, 6 (1st Cir. 1998) (explaining that under Schmuck, "an accessory-after-the-fact offense is almost never going to be a lesser included offense as to the principal crime"). Therefore, as a matter of law, Jones was not entitled to the instruction and the district court did not err in refusing to give it.

VI.

Finally, Jones argues that there was insufficient evidence to support his convictions. We review such a claim by determining whether "there is substantial evidence, taking the view most favorable to the Government, to support" the guilty verdict. Glasser, 315 U.S. at 80. Having reviewed the record, we hold that there was sufficient evi-

10

dence to support Jones' convictions and thus conclude that there is no merit in this contention of error.**4**

VII.

In sum, we hold that the district court committed no error. Accordingly, we affirm.

AFFIRMED

_____

**4** We conclude that Bobbitt's claims regarding insufficiency of the evidence, raised in his pro se brief, are similarly without merit. We have carefully reviewed the remaining claims in Bobbitt's pro se brief and conclude that they, too, are without merit.

11